IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CORNELIA C. BROWN,

                            Plaintiff,

          v.                                    Civil Action No.
                                                5:05-CV-1044 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

CORNELIA C. BROWN, *Pro se*

FOR DEFENDANT:

HON. GLENN T. SUDDABY          WILLIAM H. PEASE, ESQ.
United States Attorney          Assistant U.S. Attorney
Northern District of New York
100 South Clinton Street
Syracuse, NY 13261-7198

BARBARA L. SPIVAK               KARLA J. GWINN, ESQ.
Regional Chief Counsel          Assistant Regional Counsel
Social Security Administration
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, NY 10278

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

Plaintiff Cornelia C. Brown, who claims to suffer from severe degenerative disc disease, herniated discs, and chronic back pain, has commenced this proceeding to challenge the denial of her application for disability and supplemental security income ("SSI") Social Security benefits.  Although the arguments of the plaintiff, who is proceeding *pro se*, are somewhat difficult to understand, she apparently contends the finding by the Administrative Law Judge ("ALJ") who heard and decided the matter at the agency level, to the effect that despite her limitations she is capable of fulfilling the exertional requirements associated with her past relevant work as a day care worker and a kitchen helper, is not supported by substantial evidence and that in arriving at his finding the ALJ improperly relied upon medical records which were falsified and, in one case, from a doctor who never examined or treated her.

Having carefully reviewed the record in light of what I interpret plaintiff's argument to be, I find that the ALJ's determination of no disability resulted from the application of proper legal principles, and is supported by substantial evidence.

I.      BACKGROUND

A.    Social History

The plaintiff was born on January 24, 1951; at the time of the

administrative hearing in this matter, she was fifty-three years old.

Administrative Transcript at pp. 15, 50, 53, 242.[1]  Plaintiff has completed

her high school education, and attended one year of college.  AT 78, 242.

While plaintiff was married on September 27, 1976, that union ended in a

divorce on March 28, 1994, and plaintiff has not remarried.  AT 50, 53.

Brown has two children, one of whom is sixteen years old and still residing

with her.  AT 51, 109, 257.

Plaintiff last worked in or about 2001.  AT 61, 65, 243.  Prior to that

time, Brown was employed as a daycare worker, and as a kitchen helper.

AT 84, 122, 258.

B.    Medical History

Plaintiff's medical problems appear to have originated on or about

October 23, 1998, when she underwent a total abdominal hysterectomy

and bilateral salpingo-oophorectomy at St. Joseph's Hospital Health

Center ("St. Joseph's") for treatment of severe metromenorrhagia leading

---

[1]      Portions of the administrative transcript of proceedings and evidence
before the agency, Dkt. No. 10, filed by the Commissioner together with his answer,
will hereinafter be cited as "AT __."

to anemia.  AT 15, 124.  Although the surgery appears to have been successful, Brown fell twice while in the hospital for postoperative care, and complications required a second surgery for the insertion of a filter in her inferior vena cava to prevent future pulmonary embolisms.  AT 124-25, 194, 207-10.

Brown's medical condition following her release from St. Joseph's was considered by over a dozen medical professionals over the ensuing five years.  Between November 27, 1998 and August of 2000, six different doctors at St. Joseph's Imaging Associates ("St. Joseph's Imaging") examined Brown's circumstances.  AT 132-35, 137, 139.  Although their observations were varied, the general consensus of opinion from those physicians was that the rectus and pelvic hematomas and fluid within the plaintiff's abdomen had decreased.  AT 133-35, 139.  It was also noted that Brown suffered from borderline levoscoliosis with an apparent pelvic tilt, mild degenerative change of the lumbar spine, and a linear scar.  AT 132, 137.

Magnetic resonance imaging ("MRI") testing of the plaintiff was conducted on several occasions between December 9, 1999 and September 12, 2003.  AT 198-202.  The results of the various MRI tests

-4-

were relatively similar, and included findings of degenerative disc disease,

mild diffuse disc bulge, borderline levoscoliosis with pelvic tilt, kyphosis,

and hemangioma of a vertebral body.  *Id.*

Brown was examined on September 9, 1999 by Pamela Taber, a

licensed physical therapist at Community General Hospital.  AT 131.  In a

report of that examination Taber recorded a number of findings, noting

that Brown suffers from pelvic asymmetry, muscle imbalance, protective

muscle spasms, and tender/weak abdominal muscles, and recommended

that Brown receive physical therapy twice weekly for approximately six

weeks.  *Id.*

Based apparently on the persistence of her symptomology, plaintiff

was examined at Atlas Chiropractor, P.C. on nine occasions between

August 22, 2000, and September 21, 2000 for continuing pain in her groin,

thigh, and lower back.  AT 140.  During that treatment Brown described

her pain as sharp, and noted that it was brought on by bending forward,

lifting, and walking up stairs.  *Id.*  A summary report from Atlas

Chiropractic reflects diagnoses of a lumbar spine sprain/strain and lumbar

spine subluxation.  *Id.*

Between March 15, 2002 and October 3, 2002, Brown was seen on

six separate occasions by Dr. Rachna Zirath at Health Center East for ongoing treatment of hypertension and paresthesias, as well as complaints of shortness of breath.  AT 156, 162-63, 164A, 167-68, 170-71, 174-75.  Although her blood pressure remained elevated, Dr. Zirath was able to manage Brown's hypertension with a series of medications.[2]

On April 30, 2002, a written assessment of the limitations experienced by the plaintiff as a result of her medical conditions was prepared by M. Larsh, an agency medical consultant.  AT 141-47.  In that residual functional capacity ("RFC") survey, Larsh diagnosed the plaintiff as suffering from hypertension and back pain, and determined that her complaints of pain were partially consistent with her medical history, but that despite her medical condition she could clean, mop, shop, rake leaves, cook, drive, travel, and socialize.  AT 146.  Ultimately, Larsh concluded that Brown was not considered disabled under the guiding standards laid out in the medical-vocational guidelines (the "grid"), 20 C.F.R. Pt. 404, Subpt. P, App. 2.

While this is controverted by the plaintiff, the administrative record

---

[2]     In a form dated January 4, 2004, plaintiff reported taking Coumadin, Neurontin, Triamterene, Lisinopril, and Tylenol with Codeine, and additionally noted that she had previously taken Hydrochlorothiazide.  AT 118, 121, 182.

discloses that on July 11, 2002, she was examined by Dr. David Carter of Crouse Neurosurgical Associates, for neck, left arm, and right shoulder pain resulting from an apparent motor vehicle accident.  AT 204-06. Although Dr. Carter discerned disc herniation in Brown's cervical spine, which he concluded was likely brought about by the accident, he noted Brown's agreement that the injury was "not truly disabling" and her decision not to pursue surgical options.  AT 205.

Kristen Cominsky, M.S.N., of Health Center East, examined the plaintiff on December 17, 2002.  AT 153.  In a report of that examination, Ms. Cominsky reported that Brown suffered from chronic groin pain, most likely attributable to her back condition.  *Id.*

On April 23, 2003, Brown was examined by Dr. Myra Shayevitz of Industrial Medicine Associates, P.C. for pain in her right shoulder, back, and right buttock.  AT 181-84.  While noting that Brown had no problem sitting, standing, or walking in moderation, and could lift "very light" items, Dr. Shayevitz's prognosis was recorded as "guarded" based upon Brown's persistent back pain and history of protein C deficiency, pulmonary embolus, and abdominal hematoma.  AT 184.

Brown was examined on three occasions between April 14, 2003

-7-

and the end of October, 2003 by Dr. Jalal Sadrieh, of Syracuse

Orthopedic Specialists, for pain and dysfunction in the lumbar/thoracic

spine.  AT 186-91, 193-96.  Based upon those examinations, Dr. Sadrieh

concluded that Brown suffers primarily from degenerative disc disease,

radicultitis lumbosacral radiculitis, lower chronic back pain, and joint pain.

AT 187, 191, 195.  Of note, Dr. Sadrieh reported his belief that Brown is a

"good candidate" for social security benefits because she is "totally

disabled."  AT 188, 191, 195.

On August 2, 2004, Dennis Noia, Ph.D., performed a consultative

psychiatric examination of the plaintiff.  AT 227-32.  In a report of that

examination, Brown was described as "cooperative" and "[h]er manner of

relating, social skills, and overall presentation" was found to be

"adequate."  AT 228.  Brown explained to Dr. Noia that she is able to

dress, bathe, and groom herself, and that she typically spends her days

performing light chores, resting, and watching television.  AT 229.  Dr.

Noia further noted, however, that plaintiff claims to need assistance in

cooking and preparing food, and to clean, shop, and wash clothes.  *Id.*  Dr.

Noia determined that there were no psychiatric problems to report and that

any vocational difficulties experienced by the plaintiff were medical in

nature and not indicative of psychiatric issues.  AT 230.

    C.    <u>Plaintiff's Observations</u>

On March 31, 2003, Brown completed a Function Report for the Division of Disability Determinations, noting that she has to "work at a slower pace" and "take [her] time," but that she can wash dishes, mop the floor, prepare meals, shop for groceries and personal items, go out to dinner and to church, and rake leaves.  AT 110-14.  In that report, Brown explained that she leaves the house daily to walk, but cannot participate in sports because of her hip, leg, and back.  AT 112-13.  The plaintiff also reported that she can lift light and medium items, but has difficulty kneeling.  AT 110.

During her administrative hearing, Brown explained that while she returned to work in 1999, following her operation, she was forced to leave work again in 2001 based upon ongoing pain in her abdomen, lower back and leg, and in light of the inability of her physicians to conclude that her condition would eventually improve.  AT 243-44.  Plaintiff testified that while she is able to stand in line at the supermarket, sit for more than one hour at a time, carry garbage, lift a gallon of milk, and climb stairs twice without pain, any activities involving bending and lifting bring about severe

pain and "throbbing" through her entire torso.  AT 245-47, 253-56.

In an agency field office disability evaluation, dated December 13, 2002, it was noted that Brown was "very pleasant to talk to" and displayed "[n]o indication of her disability."  AT 92.  During an agency interview conducted on or about March 24, 2003, Brown stated that she was in "a lot of pain and discomfort" but was able to lift and carry children up to forty pounds during her job as a child care worker.  AT 94, 96, 102.  The plaintiff also observed during that session that after switching from child care to kitchen work, she was able to prepare and serve breakfasts and lunches, occasionally lifting twenty-five pounds in the process.  AT 95, 102-03.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

Plaintiff applied for disability and SSI benefits on December 13, 2002, alleging a disability onset date of November 30, 2001.  AT 53-55.  Those applications were denied on May 6, 2003.[3]  AT 20C, 26-28.

At plaintiff's request, an administrative hearing was conducted on

---

[3]      Plaintiff filed an earlier application for disability insurance benefits on October 11, 2000; that request, however, was denied on November 21, 2000, because of her prior employment and her level of monthly income.  AT 21-25, 50-52, 56-66.  Plaintiff did not pursue the earlier application beyond that initial denial.

-10-

July 14, 2004, with ALJ Owen Katzman presiding.  *See* AT 238-74.

During that hearing, at which plaintiff was not represented by legal

counsel, testimony was elicited from the claimant; her mother, Melouise

Crayton; Dr. Peter Manzi, a vocational expert; and Dr. Stanley Askin, a

medical expert specializing in the field of orthopedics.  *See id.*

On November 10, 2004, ALJ Katzman issued a decision regarding

plaintiff's application.  AT 13-19.  In his decision, the ALJ conducted a *de*

*novo* review of the record, applying the now-familiar, five-step test for

determining disability under the Act.  AT 14.  The ALJ determined at step

one that Brown met the nondisability requirements for a period of

disability, and had not engaged in substantial gainful activity since the

alleged disability onset date.  AT 15.  ALJ Katzman next determined that

plaintiff's degenerative disc disease in the lumbar spine region and

herniated disc disease in the lumbar and cervical spine caused sufficient

restriction upon her ability to perform basic work activities as to be

considered severe for purposes of step two of the disability algorithm.  AT

16.  The ALJ nonetheless concluded, however, those impairments do not,

either singly or in combination, meet or equal any of the listed,

presumptively disabling impairments set forth in the regulations, 20 C.F.R.

Pt. 404, Subpt. P, App.1.  *Id.*  In addressing the question of impairment, ALJ Katzman considered, but ruled out the possibility of a mental or psychiatric impairment, based principally on a consultative psychological evaluation performed on August 2, 2004 by Dennis Noia, Ph.D.  AT 16.

The ALJ next set about the task of determining the plaintiff's RFC. After considering, but rejecting as only partially credible, plaintiff's claims of disabling pain, based upon the lack of medical evidence and the inconsistency of her pain complaints with indications of her daily activities, the ALJ concluded that the only functional limitation presented by her conditions is that she is unable to carry more than twenty-five pounds on a frequent basis and no more than fifty pounds in any event.  AT 17.  In arriving at that conclusion the ALJ relied, in part, upon testimony elicited from orthopedic expert Dr. Stanley Askin.  During the hearing, Dr. Askin opined that Brown does not have a medical condition which meets or equals any listed impairment related to musculoskeletal conditions.  AT 265.  Dr. Askin suggested that claimant's pain was principally the result of the degenerative change and would likely require a medium duty work restriction in order to accommodate any resulting limitations.  AT 265-66, 268.  Dr. Askin also concluded that there was nothing in plaintiff's medical

records that would explain Brown's complaints of "throbbing."  AT 269-70.

After affixing plaintiff's RFC, ALJ Katzman next turned to consideration of whether, given her limitations, plaintiff is nonetheless capable of performing her past relevant work.  In arriving at his determination on this issue ALJ Katzman sought the assistance of vocational expert Dr. Peter Manzi.  In his testimony, Dr. Manzi was asked to address the impact of the limitations, resulting from plaintiff's various medical conditions, upon her ability to perform her past relevant work.  AT 271-74.  Addressing the skill and exertional levels associated with plaintiff's prior positions as a day care worker and as a kitchen helper, the vocational expert noted the day care worker position was classified as light, semi-skilled work, and that the kitchen helper was regarded in the field as medium, unskilled.  AT 272.  Dr. Manzi also concluded that if plaintiff's testimony regarding her pain and resulting limitations were credited, she would be unable to perform the functions of her past relevant work.  AT 273.  Based upon his findings and Dr. Manzi's testimony, ALJ Katzman determined that the plaintiff is able to perform her past relevant work as both a kitchen worker and a day care provider, and thus concluded that she does not meet the test for disability under the Act.  AT

18.

The ALJ's findings became a final determination of the agency

when, on July 29, 2005, the Social Security Administration Appeals

Council denied plaintiff's request for review of that decision.  AT 4-6.

B.    This Action

Brown commenced this action on August 17, 2005.  Dkt. No. 1.

Issue was subsequently joined on March 9, 2006 by the Commissioner's

filing of an answer, accompanied by an administrative transcript of

evidence and proceedings before the agency.  Dkt. Nos. 9, 10.  With the

filing of an original brief by the plaintiff, who is proceeding *pro se*, on June

8, 2006, Dkt. No. 12, a responsive brief by the Commissioner, filed on July

24, 2006, Dkt. No. 14, and a supplemental brief submitted by the plaintiff

on August 16, 2006, Dkt. No. 15, the matter is ripe for determination and,

with consent of the parties, is now before me for resolution on the merits

pursuant to 28 U.S.C. § 636(c).[4]  *See also* Fed. R. Civ. P. 73.

_____

[4]     This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the
Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998,
and subsequently amended and reissued by Chief District Judge Frederick J. Scullin,
Jr., on September 12, 2003.  Under that General Order an action such as this is
considered procedurally, once issue has been joined, as if cross-motions for judgment
on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314

(N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Martone*, 70 F. Supp. 2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42

-16-

U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

B.    Disability Determination: The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

-17-

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of
> such severity that he is not only unable to do his previous work
> but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful
> work which exists in the national economy, regardless of
> whether such work exists in the immediate area in which he
> lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then

the second step involves an examination of whether the claimant has a

severe impairment or combination of impairments which significantly

restricts his or her physical or mental ability to perform basic work

activities.  *Id.* §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from such an impairment, the

-18-

agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

> C.     The Evidence In This Case

Due undoubtedly to the fact that she has not had the benefit of legal

representation, plaintiff's arguments in support of her challenge to the

agency's determination are somewhat vague.  Plaintiff appears to contest

the Commissioner's determination as lacking the support of substantial

evidence, additionally raising a claim that certain of her medical records

contained within the record and relied upon by the ALJ were falsified, or

do not apply to her circumstances.[5]

> 1.     RFC Finding

The lynchpin of the ALJ's decision is his determination that

notwithstanding Brown's degenerative disc disease and herniated discs,

she is capable of performing her past relevant work, and meeting the

exertional requirements of those positions.[6]  In order to uphold the ALJ's

---

[5]     Because she is unrepresented, plaintiff's papers are entitled to liberal construction; I have therefore considered any argument which it appears that she has raised, or which could reasonably be asserted, based upon the record before me. *See Haines v. Kerner,* 404 U.S. 519, 519, 92 S. Ct. 594, 595 (1972); *see also Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007); *Pena v. Barnhart*, No. 01 Civ. 502, 2002 WL 31487903, at *2 n.2 (S.D.N.Y. Oct. 29, 2002).

[6]     Plaintiff's prior employment as a day care worker entailed exertional requirements equivocal to light work, requiring that the plaintiff be capable of lifting twenty pounds occasionally and ten pounds frequently and standing up to six hours out of an eight hour day.  AT 272; *see* 20 C.F.R. § 404.1567(b); SSR 83-10.  The kitchen helper, the other position held in past by the plaintiff, involves a medium work exertion

finding, the court must find that his RFC assessment is supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(e). When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory

---

level, requiring the lifting of twenty-five pounds frequently and fifty pounds occasionally. AT 272; *see* 20 C.F.R. § 404.1567(c).

statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta*, 737 F. Supp. at 183); *Sobolewski*, 985 F. Supp. at 309-10.

A review of the record reveals that this RFC finding is supported by substantial evidence.  The orthopedic expert, Dr. Askin, testified that while plaintiff suffers from degenerative disc changes, characterized by him as being age-appropriate, her medical records do not disclose a condition which would explain the throbbing pain she claims to experience.  AT 263-71.  Based upon his review of plaintiff's records, from a musculoskeletal standpoint Dr. Askin concluded that plaintiff is capable of performing the exertional requirements of medium work.  AT 265-66.

Dr. Askin's conclusion is consistent with other findings of treating and consultative physicians, as well as the results of clinical testing.  An examination conducted on March 15, 2002 by treating physician Dr. Rachna Zirath, for example, revealed normal muscle strength, deep tendon reflexes which were found to be 2+ bilaterally, and with peripheral

-22-

pulses present and cranial nerves intact.  AT 175.  A follow-up

examination by Dr. Zirath resulted in findings that plaintiff did not have any

obvious back tenderness, leg swelling, numbness, tingling or weakness in

any part of the body.  AT 156, 162, 167.  During one such examination of

the plaintiff conducted on May 20, 2002, Dr. Zirath advised her to walk

every day, exercise, and eat a healthy diet.  AT 164A.

The ALJ's RFC finding is slightly at odds with the recorded results of

a consultative examination performed by Dr. Myra Shayevitz on April 23,

2003; many of the findings recorded by Dr. Shayevitz, following her

examination, however, are in fact supportive of the RFC finding.  *See* AT

181-84.  Dr. Shayevitz's examination revealed, for example, a normal gait

and stance, as well as plaintiff's ability to walk on heels and toes without

difficulty.  AT 182.  Dr. Shayevitz also found plaintiff to have full flexion,

extension, lateral flexion and full rotary movement bilaterally of the cervical

spine.  AT 183.  Dr. Shayevitz further found no outward symptoms

suggestive of more serious consequences, noting that plaintiff did not

utilize an assistive device, nor did she need help changing during the

examination or getting on and off the examining table, and concluding that

plaintiff is able to sit, stand and walk in moderation without difficulty.  AT

-23-

182-84.

It is true that, based upon her examination, Dr. Shayevitz opined that plaintiff can lift light objects only infrequently.  AT 184.  This finding, however, is inconsistent with other evidence in the record, including plaintiff's own statements of her ability to lift and carry such light and medium weight objects as a gallon of milk or filled garbage bags to be taken to the curb.  AT 110, 254.  Dr. Shayevitz's conclusion in this regard is also inconsistent with the results of her own examination, revealing that plaintiff has a full range of motion in her shoulders, elbows, forearms and wrists bilaterally, with full motor strength in the upper and lower extremities, AT 183, as well as the contrary opinion of another, albeit non-examining expert, Dr. Askin, who opined based upon his review of the records that plaintiff is capable of lifting and carrying twenty-five pounds frequently, and up to fifty on occasion.  AT 265.

> 2.    Treating Orthopedic Surgeon's Finding

One of plaintiff's treating physicians, Dr. Sadrieh, expressed his belief in certain of his reports that plaintiff is "totally disabled."  AT 188, 191, 195.  In arriving at his RFC finding, the ALJ declined to give controlling weight to that conclusion.  AT 16.

Ordinarily, the opinion of a treating physician is entitled to

considerable deference, provided that it is supported by medically

acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence.[7]  *Veino*, 312 F.3d at 588;

*Barnett*, 13 F. Supp. 2d at 316.  Such opinions are not controlling,

however, if contrary to other substantial evidence in the record, including

the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28,

32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the

form of contradictory medical evidence, their resolution is properly

entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical

opinions, he or she may consider a variety of factors including "[t]he

_____

[7]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions
> from your treating sources . . . If we find that a
> treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is
> well-supported by medically acceptable
> clinical and laboratory diagnostic techniques
> and is not inconsistent with the other
> substantial evidence in your case record, we
> will give it controlling weight.  When we do not
> give the treating source's opinion controlling
> weight, we apply [various factors] in
> determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

duration of a patient-physician relationship, the reasoning accompanying

the opinion, the opinion's consistency with other evidence, and the

physician's specialization or lack thereof[.]"  *See Schisler v. Sullivan*, 3

F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527,

416.927).

When a treating physician's opinions are repudiated, the ALJ must

provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2).  Failure to apply the appropriate legal standards for

considering a treating physician's opinions is a proper basis for reversal

and remand, as is the failure to provide reasons for rejection of his or her

opinions.  *Johnson*, 817 F.2d at 985; *Barnett*, 13 F. Supp. 2d at 316-17.

At the outset, it should be noted that despite his status as a treating

physician, the opinions of Dr. Sadrieh concerning total disability are

entitled to no weight, since those conclusory statements, which appear to

have been rendered in the general context of addressing plaintiff's ability

to return to her prior employment, bear upon an ultimate issue reserved

for the Commissioner to determine under the stringent requirements

unique to the Social Security disability calculus.  20 C.F.R. §§

404.1527(e), 416.927(e); *see also Snell v. Apfel*, 177 F.3d 128, 133-34

-26-

(2d Cir. 1999).

Aside from his broad statements regarding disability, Dr. Sadrieh's reports do not contain specific findings which contradict the ALJ's RFC determination, and thus necessarily were rejected by him in finding no disability.  It is true that Dr. Sadrieh's reports reflect plaintiff's reports of ongoing back pain and tenderness, aggravated by such activities as bending, lifting, squatting, and cold weather.  *See, e.g.,* AT 186-89. Nowhere in Dr. Sadrieh's notes, however, is there any indication of any specific limitation in plaintiff's ability to lift which would undermine the ALJ's finding that she is able to lift twenty-five pounds frequently and fifty pounds in total.  It should also be noted that Dr. Sadrieh's findings regarding plaintiff's condition, as well as the results of x-rays and other testing, are essentially unremarkable.  An x-ray taken of plaintiff's lumbar spine area in or about August of 2003 reflected only minor degenerative changes.  AT 195.  Subsequent MRI testing of plaintiff's lumbar spine area in September of that year reflected the existence of degenerative disc disease at L1-2 and L4-5, with mild diffuse disc bulge at L4-5, but with no herniation noted.  AT 199.

Examinations of the plaintiff by Dr. Sadrieh also revealed negative

-27-

straight leg raises bilaterally, no neurological deficit, grossly normal neurological exam with no focal or generalizing signs, and normal distal sensation and pulses.  AT 190, 194.

In sum, aside from his conclusory statements regarding disability, none of Dr. Sadrieh's specific findings were rejected by the ALJ when demarcating the bounds of plaintiff's RFC.

### 3.    Plaintiff's Credibility

When assessing plaintiff's RFC the ALJ considered plaintiff's subjective complaints regarding the limitations imposed by her medical conditions, but found them not to be entirely credible.  AT 16-18.  The court must therefore examine this rejection to determine whether it is both properly explained, and garners support from the record.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*).  Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning

-28-

pain.  *See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984).  In

deciding how to exercise that discretion the ALJ must consider a variety of

factors which ordinarily would be relevant on the issue of credibility in any

context, including the claimant's credibility, his or her motivation, and the

medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-

1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and

Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ

must reach an independent judgment concerning the actual extent of pain

suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective

clinical evidence demonstrating that claimant has a medical impairment

which one could reasonably anticipate would produce such pain, it is

entitled to considerable weight.[8]  *Barnett*, 13 F. Supp. 2d at 316; *see also*

20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony

concerning the intensity, persistence or functional limitations associated

with his or her pain is not fully supported by clinical evidence, however,

then the ALJ must consider additional factors in order to assess that

---

[8]     In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that she does suffer from some degree

of discomfort as a result of her back condition.  The fact that she suffers

from discomfort, however, does not automatically qualify her as disabled,

since "disability requires more than mere inability to work without pain."

*Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

In this instance the ALJ was not required to conduct an exhaustive

analysis of plaintiff's credibility before reaching his conclusions regarding

her limitations, since he found it not to be credible only in part.  In her

hearing testimony, Brown acknowledged that she is able to lift a gallon of

milk and carry garbage bags to the curb, a statement credited and heavily

relied upon by the ALJ.  AT 254.  Plaintiff also reported that sitting,

standing, walking and climbing a flight of stairs once or twice did not cause

her pain, AT 181, 244, 254, and testified further that she could walk

around the block a couple of times, stand in line at the supermarket, sit for

more than an hour if she is not upset, and push a shopping cart, AT 253.

These portions of plaintiff's testimony are entirely consistent with the ALJ's

RFC findings.

The extent of plaintiff's daily activities are also consistent with the

ALJ's findings, and at variance with plaintiff's claim of suffering

excruciating pain.  Plaintiff states, for example, that she is able to wash

-31-

dishes, mop, cook, clean, do laundry, rake leaves, shop, walk outside, drive, take care of her personal needs, and read.  AT 110-13.  Plaintiff also reports being able to go to church and to dinner daily, and notes that she socializes with friends at restaurants or social events at least once each week.  AT 113-14.  These portions of plaintiff's testimony are also consistent with the finding that she is able to perform medium work.

The ALJ's rejection of plaintiff's conclusory allegations of experiencing severe pain is further supported by plaintiff's chosen course of treatment.  In a report of plaintiff's last documented visit to him, occurring on October 30, 2003, Dr. Sadrieh, plaintiff's treating physician, noted several recommended courses of action for managing plaintiff's pain, adding that plaintiff did not want to consider surgical intervention or to undergo epidural injections to help relieve her pain.  *See* AT 186-88.  The fact that the plaintiff has rejected these treatment options, which appear to be reasonably calculated to control her reported pain, is a factor which the ALJ was entitled to consider in assessing her credibility.  *See, e.g.*, *Markle v. Barnhart*, 219 F. Supp. 2d 367, 370 (W.D.N.Y. 2002) (finding that ALJ properly determined that plaintiff's subjective complaints of pain were not credible where plaintiff was "very resistant" to the

recommended course of treatment to alleviate her pain).

In sum, the ALJ's rejection of plaintiff's claim of experiencing disabling pain, to the extent that these claims could ostensibly be considered as contradictory to his RFC finding, is well-supported by the record.

### 4.    Past Relevant Work

Relying upon the testimony elicited from a vocational expert, ALJ Katzman concluded that plaintiff is capable of performing both of her past relevant jobs, notwithstanding her limitations.  The acceptance and reliance upon expert vocational testimony regarding exertional levels associated with past relevant work is an appropriate means of making a step four assessment.  *See Naegele v. Barnhart*, 433 F. Supp. 2d 319, 326 (W.D.N.Y. 2006).  In this instance, the vocational expert's testimony is fully supported by the record, and thus no basis is presented for concluding that at step four the plaintiff carried her burden of proving her inability to undertake the duties associated with those positions.  *See Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

### 5.    Reliance Upon Accurate Medical Reports

In support of her challenge to the ALJ's determination plaintiff

vigorously contests the authenticity of two medical records relied upon by the ALJ, and additionally challenges the ALJ's refusal, despite her request, to subpoena records from another medical care provider.

a.   Dr. Nabil Aziz

Following the hearing, as well as a post-hearing consultative psychological evaluation performed at the ALJ's request, *see* AT 227-31, plaintiff sought a supplemental hearing and requested the issuance of subpoenas for additional records from one of her treating physicians, Dr. Nabil Aziz.[9]  AT 235.  The request was denied based upon the ALJ's observation that Dr. Aziz had not previously been identified as a treating or examining physician.  *Id.*

It is settled that a claimant has a right to subpoena and cross-examine a treating physician at an administrative hearing.  *See Cullinane v. Sec'y of Dep't of Health and Human Servs.*, 728 F.2d 137, 139 (2d Cir. 1984).  The ALJ presiding over a hearing may issue a subpoena for the appearance and testimony of any physician whose testimony is material to an issue at the hearing.  20 C.F.R. § 404.950(d)(1).  When a party to a

---

[9]     Plaintiff also requested that a subpoena be issued for additional records for Dr. Sadrieh.  AT 13.  That request was denied by the ALJ, however, who noted that Dr. Sadrieh's records had already been obtained and were in evidence.  *Id.*

hearing desires the issuance of such a subpoena, however, a written request to that effect must be submitted to the assigned ALJ at least five days in advance of the scheduled hearing date.  20 C.F.R. § 404.950(d)(2).  Since Brown requested that Dr. Aziz be subpoenaed only after the completion of the hearing, the ALJ properly denied her request.

Undeniably, the agency is charged by law and regulation with the responsibility of obtaining and assimilating records of care and treatment relevant to the question of a claimant's disability.  *See Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. § 404.1512(d)-(f)).  In this instance, however, as the ALJ noted in his decision, *see* AT 13, Dr. Aziz was not identified by the plaintiff as a treating physician in any documents or information submitted to the agency.  *See*, *e.g.*, AT 120.  It is true that at least one document in the record, a report of MRI testing conducted in December of 1999, references Dr. Aziz and suggests that he did at one time treat the plaintiff.  *See* AT 202.  Moreover, a document recently submitted by the plaintiff to the court, but apparently not before the agency at anytime prior to culmination of the administrative process in this case, confirms that Dr. Aziz did apparently treat the plaintiff during 1999.  *See* Plaintiff's Supplemental Brief (Dkt. No. 15) at pp. 9-10 (unnumbered).

Under these circumstances, given both the lack of disclosure by
plaintiff to the agency of Dr. Aziz as a treating physician and the
remoteness in time of his treatment to the relevant time periods, coupled
with the existence of more recent records better reflecting plaintiff's
condition at the relevant times, I conclude that the failure to obtain the
records of Dr. Aziz does not warrant reversal of the agency's
determination.  *Contrast Ferguson ex rel. Ferguson v. Massanari*, No. 00
CV 5579, 2002 WL 32096580, at *1 (E.D.N.Y. Jan. 10, 2002) (remanding
case where administrative law judge failed to obtain medical records from
regular treating physician of claimant).

### b.    Dr. Paul Reznikov

In a portion of her brief which is difficult to understand, plaintiff
asserts that her rights were violated by Dr. Paul Reznikov through
submission of a report indicating that everything is normal, despite a
contradictory report rendered by that physician on November 24, 1999
reflecting findings of lumbar sacral root lesions.  *See* Plaintiff's Brief (Dkt.
No. 12) at p. 1.

This portion of plaintiff's argument is puzzling.  Nowhere in ALJ
Katzman's decision does he reference Dr. Reznikov or indicate any

-36-

reliance upon his opinions when issuing his finding of no disability.

Moreover, the record contains a report from Dr. Reznikov, dated

December 9, 1999, which does in fact include impressions that are not

entirely normal, reflecting a finding of "[d]egenerative disc disease with

loss of disc height at L1-2.  Otherwise negative lumbar spine MRI."  AT

202.  Simply stated, the allegations surrounding the diagnosis rendered by

Dr. Reznikov, based upon his MRI testing of the plaintiff, do not appear to

provide a basis for reversal of the Commissioner's determination.

c.   <u>Dr. David Carter</u>

Brown further alleges that Dr. Carter, a neurosurgeon whose report

of an examination dated July 11, 2002 is included within the record, AT

204-206, never examined her and that his report therefore does not

correspond to her medical condition.  The record reflects that on the date

of the report Dr. Carter examined a person identified as Cornelia Brown for

symptoms attributed to a motor vehicle accident in 1999.  AT 204.  Based

upon that examination, Dr. Carter diagnosed the patient as suffering from

herniated discs in the cervical region of the spine, and recommended that

she undergo a discectomy with fusion.  AT 205.

Undeniably, the record is somewhat equivocal as to whether the

-37-

plaintiff is the person referenced in the disputed report of Dr. Carter.  The report, for example, refers to the patient as a "48-year-old woman [who] says she's been in good health in the past, aside from hypertension . . . ." AT 204. The plaintiff in contrast had significant prior medical issues before that time, and, based upon her reported date of birth on January 24, 1951, would have been fifty-one years old at the time of the evaluation.  AT 204. Similarly, the evaluation seemingly was performed at the request of Dr. Anthony Cotrone of Rome, New York, whereas plaintiff's medical records contain no evidence that she was ever examined or treated by that physician.

In her brief, plaintiff alleges that she has "never been in a car accident."  Plaintiff's Brief (Dkt. No. 12) at p. 2.  Moreover, plaintiff testified during the hearing that she was never hurt in a car accident, although she did not specifically deny having been involved in one.  AT 250.  At one point during her hearing testimony, however, plaintiff appears to have acknowledged the involvement in an accident, remarking ". . . I was driving along one day and someone swerved into me and that started [the pain]". AT 255.

Plaintiff's contention that she is not the person who is the subject of

Dr. Carter's July 11, 2002 report is at least facially plausible.  This fact, however, does not undermine the ALJ's decision for two reasons.  First, there is no indication in his decision that the ALJ placed any weight upon Dr. Carter's evaluation.  More fundamentally, Dr. Carter's evaluation reflects the existence of a condition, with resulting limitations, far more severe than those found by the ALJ, noting the existence of disc herniation in the cervical region and recommending a surgical discectomy.  AT 205.  Accordingly, the existence in the record of this report which, plaintiff maintains, does not relate to her, does not appear to have influenced the ALJ's decision, and thus does not deprive his findings of the support of substantial evidence.

IV.    <u>SUMMARY AND ORDER</u>

The evidence in the record, including both extensive medical evidence and plaintiff's own testimony, reveals that despite her condition plaintiff is capable of performing her past relevant work, and that she suffers from few work-related limitations other than the inability to lift more than twenty-five pounds frequently and fifty pounds on occasion.  Since, based upon the testimony of a vocational expert, it appears that these limitations do not present an impediment to her performing the functions of

her past relevant work, the ALJ's determination that she is disabled is supported by substantial evidence.  Accordingly, it is therefore hereby

ORDERED that the defendant's motion for judgment on the pleadings be GRANTED, and the Commissioner's determination of no disability AFFIRMED, and plaintiff's complaint be DISMISSED in all respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this decision and order upon the parties in accordance with this court's local rules.


Date:        September 12, 2007
             Syracuse, NY


David E. Peebles
U.S. Magistrate Judge